UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRY CICIO,

                Plaintiff,

v.                                                  **DECISION AND ORDER**
                                                          13-CV-195S

DEPUTY WENDERLICH,
*Superintendent Security*,

                Defendant.

## I. INTRODUCTION

Plaintiff Terry Cicio, an inmate formerly held at the Elmira Correctional Facility in the care and custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action under 42 U.S.C. § 1983 alleging that Defendant Stephen Wenderlich, Deputy Superintendent for Security at Elmira during the time in question, failed to protect him from being attacked by two prisoners in September 2012.

Presently before this Court is Wenderlich's Motion for Summary Judgment. (Docket No. 36.) Having considered the parties' written submissions and the applicable law, this Court will grant Wenderlich's motion and dismiss Cicio's complaint for failure to exhaust administrative remedies.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted. They are drawn from Wenderlich's Statement of Undisputed Facts (Docket No. 36-1) and Cicio's Declaration (Docket No. 50).

Cicio was an inmate at Elmira from July 2012 to December 2012. On his first day at Elmira, Cicio met a fellow Muslim inmate named Malik. Malik was a member of the Muslim "security team" that apparently existed among inmates at Elmira. At some point before September 10, 2012, Cicio and Malik had a falling out. Malik allegedly threatened Cicio, but Cicio believes that Malik told other Muslim inmates that he (Cicio) had actually threatened Malik.

On September 10, 2012, Cicio heard two unknown Muslim inmates talking about a knife and his cell location. This prompted Cicio to write a letter to Wenderlich that same night to inform him that he was threatened by a Muslim inmate and to request that he be placed in protective custody. Cicio claims that he sent the letter to Wenderlich the next day, September 11, 2012, but never received a response. Wenderlich denies ever receiving Cicio's letter, and Cicio does not know if Wenderlich ever received it. Cicio claims that he sent a similar second letter to Wenderlich on September 13, 2012, which Wenderlich also denies receiving.

The day after Cicio allegedly sent his second letter to Wenderlich, he was attacked in the Elmira Field House. The evening of September 14, 2012, Plaintiff was in the Field House watching television with other inmates. At some point during the evening, an inmate sitting behind Cicio struck him in the face with a razor and then fled, while a second inmate sitting in front of Cicio turned and began fighting with him. Cicio did not know the two individuals who attacked him, though he had seen them at Muslim services. Cicio did not have problems with either attacker in the past and neither

2

previously posed a threat to him. After corrections officers broke up the fight, Cicio was placed in Involuntary Protective Custody.

Cicio claims that he filed a grievance regarding this incident on September 15, 2012, but he never received a response. He admits that he did not appeal the non-response to his grievance or otherwise pursue any further administrative remedies. Instead, he filed the instant suit on February 22, 2013. DOCCS's records indicate that Cicio never filed a grievance while at Elmira and never appealed a grievance from Elmira. (Declaration of William Abrunzo, Docket No. 36-4, ¶ 8; Declaration of Jeffery Hale, Docket No. 36-5, ¶ 6.)

## III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially important when reviewing pro se complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Since Cicio is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Wenderlich moves for summary judgment on the grounds that (1) Cicio failed to exhaust his administrative remedies, (2) Cicio did not suffer an Eighth Amendment violation, (3) Wenderlich was not personally involved in the alleged constitutional violation, and (4) Wenderlich is entitled to qualified immunity. Because it is plain that Cicio failed to exhaust his administrative remedies, dismissal of the complaint is

3

required, and this Court need not reach Wenderlich's remaining grounds for summary judgment.

**A.    Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence

4

showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the non-moving party. Anderson, 477 U.S. at 252.

As noted, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of NY & NJ, 400 Fed. Appx. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure).

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B.     42 U.S.C. § 1983**: **Eighth Amendment Failure-to-Protect Claim**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought under § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Cicio's failure-to-protect claim falls under the Eighth Amendment.

The Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. NYC Dep't. of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)).  Thus, "allowing an attack on an inmate to proceed without intervening is a constitutional violation in certain circumstances." Rosen v. City of New York, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009) (quoting Baker v. Tarascio, No. 3:05-CV-548, 2009 WL 581608, at *4 (D. Conn. Mar. 6, 2009)).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  Stewart v. Schiro, No. 13-CV-3613, 2015 WL 1854198, at *6 (E.D.N.Y. Apr. 22, 2015).

6

Pursuant to § 1983, prison officials may be held liable for an inmate's injuries only if the officials acted with "deliberate indifference" to a substantial risk to the inmate's safety. Morales v. NYS Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988). To demonstrate such deliberate indifference, a plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." Hayes, 84 F.3d at 620; see also Warren v. Goord, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007).

Cicio alleges a failure-to-protect claim arising out of his attack in the Elmira Field House, but as stated below, he has failed to exhaust his administrative remedies with respect to this claim. His complaint must therefore be dismissed.

## C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 165 L. Ed. 2d (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); Hargrove v. Riley, No. 04–CV–4587, 2007 WL 389003, at *5-*6 (E.D.N.Y. Jan. 31,

7

2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

In the event the defendant establishes that the inmate plaintiff failed to fully complete the administrative review process before commencing the action, the plaintiff's complaint is subject to dismissal. Pettus v. McCoy, No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006); see also Woodford, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." Woodford, 548 U.S. at 95; accord Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007).

In New York, formal exhaustion of administrative remedies for prison inmates requires compliance with a detailed three-step grievance and appeal procedure. See Morrison v. Parmele, 892 F. Supp. 2d 485, 487 (W.D.N.Y. 2012) (citing 7 N.Y.C.R.R. § 701.5)). The grievance process outlined at § 701.5 provides that: (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal

8

with the IGP clerk; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. See Thousand v. Corrigan, 9:15-CV-01025 (MAD/ATB), 2017 WL 1093275, at *3 (N.D.N.Y. Mar. 23, 2017); Turner v. Goord, 376 F. Supp. 2d 321, 323 (W.D.N.Y. 2005). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Hairston v. LaMarche, Case No.05 Civ. 6642, 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases). If all three levels of review are exhausted, the prisoner may seek relief in federal court under § 1983. See Thousand, 2017 WL 1093275, at *3; Bridgeforth v. DSP Bartlett, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010).

While the Supreme Court has deemed the exhaustion of administrative remedies generally mandatory, it has held that a prisoner's duty to exhaust is limited to "available" administrative remedies.[1] Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. at 1858. To be "available," administrative remedies (e.g., grievance procedures) must be "capable of use to obtain some relief for the action complained of." Id. at 1859 (quoting Booth v. Churner, 532 U.S. 731, 738, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001)). The Court in Ross identified three circumstances in which an administrative remedy may be unavailable:

---

[1] With this holding, the Court in Ross rejected the Second Circuit's "extra-textual" exception to the exhaustion requirement, which allowed courts to consider whether "special circumstances" justified a prisoner's failure to exhaust administrative remedies. See Williams, 829 F.3d 118, 123 (2d Cir. 2016) (recognizing that Ross largely abrogates the framework set forth in Giano v. Goord, 380 F.3d 670, 675-76 (2d Cir. 2004) and Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004), which set forth a "special circumstances" exception to the PLRA's exhaustion requirement).

> First, an administrative remedy may be unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Second, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In other words, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. Third, an administrative remedy may be unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Williams v. Correction Officer Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016) (citing Ross, 136 S. Ct. at 1859-60) (quotation marks and citations omitted).

It is undisputed that Cicio failed to exhaust his administrative remedies by pursuing all three steps of the grievance and appeal procedures. Cicio's only argument concerning his failure to exhaust is that he was prevented from doing so because he never received a response to the grievance he allegedly filed. See Docket No. 50 ("[P]laintiff provided the court with a receipt for filing [h]is first step grievance, but received no response, thereby preventing him from appealing the grievance.") He therefore maintains that he could not complete the second and third stages of the administrative review process.

Even assuming that Cicio filed an initial grievance—an assumption directly contrary to DOCCS's records—it is well settled that the lack of response to that grievance does not excuse Cicio's failure to appeal to the next level.[2] Cicio was thus required to appeal his grievance despite the alleged lack of response. See Atkins v. Menard, No. 11–CV–0366, 2012 WL 4026840, at *4, (N.D.N.Y. Sept. 12, 2012) (finding

---

[2] Cicio's reliance on cases from outside the Second Circuit that may state a contrary rule is misplaced. See Docket No. 51, p. 4 (citing Brengettcy v. Horton, 423 F.3d 674 (7th Cir. 2005) and Boyd v. Corr. Crop. of Am., 380 F.3d 989 (6th Cir. 2004)).

10

that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); Murray v. Palmer, 03-CV-1010, 2010 WL 1235591, at *2 & n. 4 (N.D.N.Y. Mar. 31, 2010) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must be—appealed to the next level, including CORC, to complete the grievance process.") (collecting cases); Williams v. Hupkowicz, 04-CV-0051S, 2007 WL 1774876, at *3 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA."); see also 7 N.Y.C.R.R. § 701.6 (g)(2) ("[M]atters not decided within the time limits may be appealed to the next step.").

Because it is undisputed that Cicio failed to appeal his grievance and consequently failed to exhaust all administrative remedies that were available to him, his complaint must be dismissed. See Guarneri v. West, 782 F. Supp. 2d 51, 59 (W.D.N.Y. 2011) ("Each level of the grievance procedure must be exhausted before an inmate may commence litigation in federal court.").

### IV. CONCLUSION

For the reasons stated above, Wenderlich has established that he is entitled to summary judgment dismissing Cicio's complaint in its entirety for failure to exhaust administrative remedies. The complaint will therefore be dismissed.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 36) is GRANTED.

FURTHER, that the complaint (Docket No. 1) is DISMISSED.

FURTHER, that the Clerk of the Court is directed to CLOSE this case.

SO ORDERED.

Dated: April 24, 2017
       Buffalo, New York

                                       <u>/s/William M. Skretny</u>
                                       WILLIAM M. SKRETNY
                                       United States District Judge